**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | | |
|---|---|---|
| Joseph Wallace, | : | |
| Petitioner, | : | Civ. No. 14-67 (SRC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| Stephen D'Ilio, | : | |
| Respondent. | : | |

**Chesler**, District Judge

Petitioner Joseph Wallace ("Wallace"), an inmate confined in New Jersey State Prison in Trenton, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF No. 5 at 1.) He raised thirteen grounds for relief in his challenge to his October 26, 2006 judgment and conviction for weapons charges and murder. Respondent filed an answer, asserting that the petition should be (1) dismissed as barred by the statute of limitations; or (2) dismissed as a mixed petition; or (3) denied on the merits as follows: (a) Grounds Six and Seven raise only state law claims; (b) Grounds One through Three are procedurally defaulted; and (c) the remaining grounds lack merit. (ECF No. 13.) Wallace filed a reply. (ECF No. 15).

I.   BACKGROUND

After his conviction in the Superior Court of New Jersey,

Essex County, Wallace was sentenced to an aggregate of forty years imprisonment, subject to the parole ineligibility provisions of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. State v. Wallace, 2009 WL 1139120, at *1 (N.J. Super. Ct. App. Div. April 29, 2009). He

The New Jersey Superior Court Appellate Division made the following findings of fact on Wallace's direct appeal:

> On the evening of June 15, 2005, David Ortiz walked out of a grocery store on Third Street and Central Avenue in Newark. He saw Wallace, whom he said is commonly known as "Jay Jerk," across the street arguing with James McMillon. Wallace appeared angry and told McMillon that he should not be selling drugs on that block and that he was taking away his sales. Wallace was with someone known to Ortiz as "Jay Jay," who was later identified as John Boyd. Ortiz noted that Boyd had a cast on his arm. Wallace pulled out a black gun from his waist and shot McMillon twice; once in the stomach and once in the head. Boyd went through the victim's pockets before he and Wallace walked away.
>
> Terrence Matthews, age sixteen, who had known Wallace for three or four years, also witnessed the shooting. He saw Wallace, who wore his hair in dreadlocks, arguing and acting aggressively toward McMillon, who was selling drugs. Wallace then shot McMillon with a black revolver. Matthews heard two shots and ran away. Matthews also recalled that Wallace was with a man who had a cast on his arm.
>
> A third eyewitness, Adrienne Davis, drove up to the laundromat on the corner and saw a group of men. She pulled up and was talking to a friend on her cell phone. Davis heard two pops

2

and then saw the victim fall to the ground.
After the shooter shot the victim, he walked
right in front of Davis's car and then started
running, making a right turn at the first
corner, as people yelled for him to stop.
According to Davis, the shooter was very dark-
skinned, wore his hair in dreadlocks, and was
dressed in a white t-shirt, jeans, and black
baseball hat. Davis left the area without
going to the laundromat. She called 9-1-1 to
report the shooting, but did not provide her
name.

A fourth eyewitness, Maneerah Munoz, was going
to the grocery store on the corner when she
observed the shooting. Munoz saw four men
standing together. One of them, using a black
gun, shot the man standing in the middle
twice, and then ran away. The shooter was
wearing a white t-shirt, blue jeans, and a
black hat. Munoz saw Matthews, whom she had
known for eight to ten years, running away
with the shooter.

Immediately after the shooting, Officer Ceasar
Estella of the Newark Police Department
received a call of shots fired and a man shot
and injured. He drove to the scene with his
partner, Officer Joe Tavares. The officers
found the victim lying on his back with blood
coming from the back of his head. The victim's
wallet was next to him.

The next day, June 16, 2005, the police
contacted Munoz, who gave a statement at
police headquarters. Munoz told police that
Matthews was at the scene and had run away
with the shooter. She identified a photograph
of Matthews.

Having received a phone call from Matthews'
mother, the police located Matthews on June
17, 2005, and brought him to headquarters for
questioning. Before beginning the interview,
Matthews' mother was also brought to

headquarters and given the option of being in the interview room. She opted to remain in the outer room while her son was questioned.

That same day, after reading Matthews the photograph display instructions, Detective Raul Diaz showed an array of six photographs to Matthews. According to Diaz, because Matthews was a juvenile, his guardian was present, although at trial Matthews could not recall that his mother was there and thought that she had not arrived until they called her to pick him up. Matthews selected Wallace's photograph and signed and dated the back of it. On the photograph selected, Diaz noted that Matthews was "relaxed and confident." On a form he signed, Matthews wrote that the person identified in the photograph, Wallace, was the person who "killed the guy" and "shot at the guy with a handgun." Matthews described the shooter as wearing a white t-shirt, pants, and Timberland boots. At trial, Matthews testified that he was not forced to pick out Wallace's photograph, and he identified Wallace in court as the person who had shot and killed McMillon.

On June 18, 2005, Ortiz met with the police. They showed Ortiz an array of six photographs. When he was shown a photograph of Wallace, Ortiz got very excited and said, "that's him." Ortiz signed and dated the back of Wallace's photograph. Ortiz identified Wallace as the person he had seen arguing about drug sales with "the boy that got killed on Central Avenue." In his statement prepared the same day, Ortiz did not tell police that he saw Wallace shoot anyone, but said only that he saw Wallace arguing with the victim. However, when Ortiz met with police the next day, on June 19, he said that he actually saw Wallace shoot McMillon. At trial, Oritz testified that there was no doubt in his mind that Wallace was the person who shot and killed McMillon.

4

On June 20, 2005, the police asked Munoz to
return to the station because they had
developed suspects and wanted to show her a
photo array. Police showed Munoz an array of
six photographs, and she selected Wallace's
photo as that of the shooter and signed and
dated the photo. At trial, Munoz identified
Wallace and testified that she was one hundred
percent sure that he was the shooter.

Although Davis had not provided her name when
she called 9-1-1 after the shooting, the
police eventually located her through her
phone number, having subpoenaed the cell phone
company. On June 24, 2005, Davis described the
shooter as very dark-skinned, wearing his hair
in dreadlocks, and dressed in a white t-shirt,
jeans, and a black baseball hat. An officer
attempted to have Davis look at photographs of
potential suspects for identification, but
Davis refused.

Based on the identification of Wallace as the
shooter by Ortiz, Munoz, and Matthews, the
police obtained a warrant for his arrest. On
July 1, 2005, at about 6:45 a.m., the police
went to 225 Hunterdon Street, Apartment 4N, in
Newark for the purpose of arresting Wallace.
The officers knocked on the apartment door and
waited for about ten to fifteen minutes. Eric
Murphy opened the door. As the police entered
the small apartment, they saw Wallace, wearing
only pants, and Boyd, who had a cast on his
arm, walk out of a back bedroom together.
Wallace and Boyd were arrested and secured.

The officers then entered the bedroom the men
had just left. Through an open, accordion-type
closet door, they saw a gun on top of a pile
of clothes. The gun, a .357 caliber magnum
revolver, was fully loaded with six rounds of
ammunition. There was also a live bullet on
the floor in the bedroom. The police allowed
Wallace to get dressed and put on shoes, and
then transported him to police headquarters.

5

Wallace had two tattoos: one that said "Jay-Merk," and the other said, "Jay Jerk," the nickname by which Ortiz had known him.

An autopsy revealed that the victim died of gunshot wounds to the head and chest. Both bullets passed completely through his body. No spent bullets or casings were recovered at the scene of the shooting.

Detective Louis Alarcon of the Newark Police Department, an expert in the field of ballistics examination and firearms identification, examined the .357 caliber magnum revolver that had been seized from the apartment at which Wallace was arrested. He fired two test shots from the gun and determined that it was completely operable and in good working order. Because it was a revolver, spent shell casings remained inside the cylinder until manually removed. When asked why he referred to the finish of the gun as blue, Alarcon explained that the gun had a finish applied to it that is called "bluing," which is a color between blue and black, but depending on how much polish is used, the gun could appear bluish or blackish.

In June 2006, Wallace moved to sever count four of the indictment, which charged defendant with unlawful possession of a handgun on July 1, 2005. Decision on the motion was deferred.

In September 2006, Judge Betty Lester denied Wallace's request for a full Wade hearing on the admissibility of the pretrial identifications, holding that Wallace had not made the required threshold showing that there was some evidence of impermissible suggestiveness in the identification process. Wallace also renewed his motion to sever count four. Judge Lester held that, although she was "not prepared to sever this count from the trial," she would revisit the issue based on

6

the evidence presented.

Wallace moved to suppress the handgun seized from the apartment at which he was arrested on July 1, 2005. On October 18, 2006, Judge Lester held a pretrial admissibility hearing on the motion to suppress the gun, reserving decision at the conclusion of the proceedings. The following day, October 19, 2006, she issued an oral opinion denying the motion. The judge also revisited Wallace's motion to sever count four, but did not change her ruling.

After the jury had been selected, but prior to opening statements, the trial judge and counsel learned that a relative of the victim had made the following statement in the hallway outside of the courtroom in the presence of some of the jurors: "He's guilty, he killed my brother." Judge Lester questioned each juror in the presence of counsel, asking what, if anything, they heard. She allowed counsel to ask follow-up questions. Defense counsel requested that a new jury be chosen. Judge Lester denied that request, stating that she was satisfied the jurors would follow her instructions and decide the case without reference to the relative's statement.

State v. Wallace, 2009 WL 1139120, at *1-4.

The Appellate Division held that the trial court correctly applied Maryland v. Buie, 494 U.S. 325, 327 (1990) in upholding the search and resulting seizure. State v. Wallace, 2009 WL 1139120 at *4-5. The Appellate Division also held that the trial court properly denied Wallace's motion to sever Count Four, the weapons charge for the revolver that was found when Wallace was arrested on July 1, 2005. Id. at 6.

7

The next issue on direct appeal was the exposure of the jury to an improper comment outside the courtroom. Id. at 9. The Appellate Division held the trial judge did not abuse her discretion by empaneling the jury with instructions that they must decide the case solely on the evidence presented at trial. Wallace had also alleged that the prosecutor improperly vouched for the credibility of witnesses during summation, but the Appellate Division denied the claim on the merits. Id. at *10. Finally, the Appellate Division found no error in the jury charge distinguishing between the two weapons counts. Id.

On July 20, 2009, the New Jersey Supreme Court denied Wallace's petition for review. State v. Wallace, 200 N.J. 209 (July 20, 2009). Subsequently, on December 22, 2009, Wallace filed a pro se petition for post-conviction relief. (ECF Nos. 13-12 through 13-15.) Wallace was represented by counsel at his PCR hearing before Judge Rachel N. Davidson. (ECF No. 13-42 at 2-3.) The PCR Court addressed almost forty issues raised by Wallace, and denied his petition on August 31, 2010. (ECF Nos. 13-2, 13-41, and 13-42.) Wallace appealed.

On April 29, 2013, the Appellate Division affirmed the PCR Court. (ECF No. 13-27); State v. Wallace, 2013 WL 1788155 (N.J. Super. Ct. App. Div. April 29, 2013). The Court found "[i]n essence, the State's proofs established that defendant shot and

killed a rival drug dealer in Newark. The State's case was based upon the testimony of several eyewitnesses." Id. at *1.

The Court affirmed the PCR Court's denial of Wallace's claims "substantially for the reason set forth in" the PCR Court's opinion. Id. (see PCR Transcript No. 13-42.) The Court held that trial counsel was not ineffective because he was unsuccessful in his pre-trial request for a Wade hearing,[1] nor was he ineffective for failing to request a cross-racial identification charge with regard to Ortiz's identification. Id. at *2. Furthermore, trial counsel was not ineffective for failing to object to the prosecutor's summation because the underlying claim was denied on direct appeal. Id. at *3.

The Appellate Division also addressed two issues raised in Wallace's supplemental brief regarding the performance of his PCR Counsel and found these contentions without sufficient merit to warrant discussion. Id. The New Jersey Supreme Court denied

---

[1] "Wade and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability." Manson v. Braithwaite, 432 U.S. 98, 112 (1977) (discussing U.S. v. Wade, 388 U.S. 218 (1967)). "A Wade hearing occurs when a question arises concerning an identification procedure that has possibly violated a constitutional right. The hearing is made outside the presence of a jury, and concerns not the in-court identification, but only the pre-trial identification." U.S. v. Stevens, 935 F.2d 1380, 1386 (3d Cir. 1991) (quoting Note, Twenty-Years of Diminishing Protection: A Proposal to Return to the Wade Trilogy's Standards, 15 Hofstra L.Rev. 583, 600 n. 160 (1987)).

Wallace's petition for certification on October 31, 2013. <u>State v. Wallace</u>, 216 N.J. 86 (Oct. 31, 2013).

Wallace filed a habeas petition under 28 U.S.C. § 2254 on January 6, 2014, a proceeding which this Court administratively closed without prejudice, allowing Wallace to reopen and file the present petition on May 28, 2014. (ECF Nos. 1, 4, 5.) Wallace alleged the following thirteen grounds for relief:

> Addendum A, Ground One: The State Court's ruling that Petitioner was not deprived of his due process right to a fair trial by the court's refusal to excuse a juror who could not definitely say that statement made by relative of the victim outside the courtroom to the jury would influence her verdict was contrary to established federal law and an unreasonable application thereof

> Addendum B, Ground Two: The State Court's ruling that Petitioner was not deprived of his due process right to effective assistance of counsel under the Sixth Amendment for failing to object to remarks made by Prosecutor in opening and closing statement was contrary to clearly established federal law and an unreasonable application of federal law

> Addendum C, Ground Three: The State Court's ruling that Petitioner was not subjected to the deprivation of his Sixth Amendment constitutional right to effective assistance of counsel by counsel failing to object to prosecutor improperly vouching for credibility of witnesses

> Addendum D, Ground Four: the State Court's ruling that Petitioner was no subjected to the deprivation of his due process right to

10

ineffective assistance of counsel claim
before his PCR hearing misinterpreting "U.S.
v. Bass" violating his Sixth Amendment right

Addendum E, Ground Five, State Court's
ruling that Petitioner was not deprived of
his due process right to a fair trial when
trial court erred in denying defendant's
motion to suppress evidence of handgun found
in a warrantless search of the apartment
belonging to friend's girlfriend was
contrary to clearly established federal law
and an unreasonable application thereof

Addendum F, Ground Six:  State Court's
ruling that Petitioner was not deprived of
his due process right to a fair trial when
trial court refused to sever Count Four of
the indictment, charging unlicensed
possession of a handgun found in apartment
belonging to friend's girlfriend was
contrary to clearly established federal law
and an unreasonable application thereof

Addendum G, Ground Seven:  The State Court's
ruling that Petitioner was not deprived of
his due process right when Judge Davidson
failed to conduct a hearing and make factual
findings, required by Monroe v. United
States, of Petitioner's claims of
ineffective assistance of counsel before
hearing was conducted was contrary to
clearly established federal law and an
unreasonable application thereof

Addendum H, Ground Eight:  State Court's
ruling that Petitioner was not deprived of
his due process right to effective
assistance of counsel for failing to
challenge the State's identification
evidence was contrary to clearly established
federal law and an unreasonable application
thereof

Addendum I, Ground Nine:  The State Court's

ruling that Petitioner was not deprived of
his Sixth Amendment right to effective
assistance of counsel by trial counsel
failing to conduct an adequate and
meaningful pretrial investigation, interview
witnesses and obtain impeachment material
was contrary to clearly established federal
law and an unreasonable application thereof

Addendum J, Ground Ten:  Defendant was
denied his fundamental right to due process
of law in a fair trial contrary to the Sixth
Amendment of the U.S. Const., Art. I Par. 10
of the N.J. Const. when trial court judge
improperly answered jury's question

Addendum K, Ground Eleven:  Defendant was
denied his fundamental right to due process
of law in a fair trial contrary to the Sixth
Amendment of the U.S. Const., Art. I Par. 10
of the N.J. Const. when trial counsel failed
to inform trial court judge that answer to
jury's question was on the record (Not
raised below)

Addendum L, Ground Twelve:  The State
Court's ruling that Petitioner was not
deprived of his Sixth Amendment right to
effective assistance by trial counsel
failing to advise defendant of plea.

Addendum M, Ground Thirteen:  The State
Court's ruling that Petitioner was not
deprived of his Sixth Amendment right to
effective assistance of counsel by trial
counsel failing to engage in plea
negotiations.

(ECF No. 5 at 28-59).

II.  <u>ANALYSIS</u>

    A.  <u>Standard of Review</u>

    28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, not the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412.

An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846

13

(quoting <u>Renico v. Lett</u>, 130 S.Ct. 1855, 1862 (2010)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). When the highest state court did not provide a reasoned opinion on the issue under review, the habeas court should look through to the last reasoned decision of the state courts. <u>Bond v. Beard</u>, 539 F.3d 256, 289-90 (3d Cir. 2008).

B.   <u>Statute of Limitations</u>

Respondent contends the habeas petition is untimely because it was not filed by March 8, 2014. (ECF No. 13 at 58.) There is a one-year statute of limitations for filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254. <u>See</u> 28 U.S.C. § 2244(d)(1). The limitations period begins to run from the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

14

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D). Furthermore, "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Id. at § 2244(d)(2).

Wallace first filed his habeas petition on January 6, 2014. (ECF No. 1.) Although the Court administratively terminated the action due to a deficiency in the filing (ECF No. 4) and later reopened the matter (ECF No. 7), administrative termination is not a dismissal for purposes of the statute of limitations. See Papotto v. Hartford Life & Acc. Ins. Co., 731 F.3d 265, 275 (3d Cir. 2013) ("[r]etention of jurisdiction through the administrative closing of a case is an established practice in district courts within our Circuit . . . administrative closings do not end the proceeding.") The initial filing date of the petition, January 6, 2014, governs for purposes of the statute

15

of limitations. (ECF No. 1.)

Wallace's judgment became final on October 18, 2009, ninety days after the New Jersey Supreme Court denied his petition for certification on July 20, 2009. See Morris v. Horn, 187 F.3d 333, 337 n. 1 (3d Cir. 1999) (State Supreme Court's decision became final when 90-day period for seeking certiorari expired). The statute of limitations began to run on October 18, 2009, but it was tolled (after 65 days) on December 22, 2009, when Wallace filed his pro se petition for post-conviction relief.

The limitations period did not begin to run again until the New Jersey Supreme Court denied Wallace's petition for certification, October 31, 2013. See Swartz v. Meyers, 204 F.3d 417, 420 (3d Cir. 2000) ("[t]olling the period of limitation between the time a state court denies post-conviction relief and the timely appeal or request for allowance of appeal is consistent with the plain meaning of the statutory language . . ."). Sixty-nine days later, Wallace filed his original habeas petition in this Court. Therefore, only 134 days had elapsed when Wallace filed his original habeas petition in this Court on January 8, 2014, and his petition was timely.

C.   Exhaustion

Respondent contends Wallace failed to exhaust his state court remedies on Grounds Two and Eleven of the habeas petition.

(ECF No. 13 at 61-64.) In Ground Two, Wallace alleged ineffective assistance of counsel for failing to object to prosecutorial misconduct in opening and closing statements. (ECF No. 5 at 30.)

   1.   Unexhausted Claim in Ground Two

In his post-conviction brief, Wallace alleged only that trial counsel failed to object to prosecutorial misconduct during summation, not in the opening statement. (ECF No. 13-13 at 31-36.) A threshold requirement for a petition under 28 U.S.C. § 2254 is that "the petitioner must have first exhausted in state court all of the claims he wishes to present to the district court." Heleva v. Brooks, 581 F.3d 187, 189-90 (3d Cir. 2009) (citing 28 U.S.C. § 2254(b)(1)(A)). Nonetheless, this Court is permitted to deny unexhausted habeas claims on the merits. See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); see also Carrascosa v. McGuire, 520 F.3d 249, 255, n. 10 (3d Cir. 2008) ("[d]enying an unexhausted claim on the merits is consistent with the statute").

Wallace did not cite any facts or present any argument in support of his claim of prosecutorial misconduct in the

17

prosecutor's opening statement. (ECF No. 5 at 30-01; ECF No. 15 at 10-12). Thus, the Court will deny this unexhausted claim for lack of merit.

2.   Merits of Exhausted Claim in Ground Two

Wallace exhausted his claim that trial counsel failed to object to improper comments by the prosecutor in summation. He first raised this issue on post-conviction review. In affirming the PCR Court's denial of the claim, the Appellate Division held trial counsel was not ineffective for failing to object to the prosecutor's summation because the underlying claim was denied on direct appeal. State v. Wallace, 2013 WL 1788155, at *3. On direct appeal, the Appellate Division noted that "[a] prosecutor may argue that a witness is credible, so long as the prosecutor does not personally vouch for the witness or refer to matters outside the record as support for the witness's credibility.") State v. Wallace, 2009 WL 1139120, at *10. The court determined that the prosecutor did not personally vouch for a witness and denied the claim. Id.

Ineffective assistance of counsel is analyzed under the test announced by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 694 (1984)). Defense counsel is not ineffective under Strickland by failing to raise a nonmeritorious claim. Bagley v. Sherrer, 2007 WL 2908766 (quoting Johnston v. Love,

940 F.Supp. 738, 776 (E.D. Pa. 1996), aff'd 118 F.3d 1576 (3d Cir. 1997) ("[c]ounsel cannot be faulted for failing to pursue meritless or futile objections."); see also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (failure to raise non-meritorious issues does not constitute ineffective assistance of counsel). On direct appeal, the Appellate Division found there was no prosecutorial misconduct. Therefore, Wallace has not established that the State court decision denying his ineffective assistance of counsel claim for failing to object to the prosecutor's statements was contrary to or involved an unreasonable application of clearly established federal law.

3. Ground Eleven

In Ground Eleven of the habeas petition, Wallace asserted trial counsel was ineffective by failing to prompt the trial court judge to read back the transcript of Matthews's cross examination to the jury in response to their question during deliberations. (ECF No. 5 at 55.) Wallace admittedly did not raise this particular claim in the state courts. (Id.)

However, Wallace exhausted his related claim that the trial judge erred by improperly answering the jury's question. (ECF No. 13-42 at 7.) The PCR Court denied the claim, as discussed in Ground Ten below. Because this Court finds the underlying claim in Ground Ten lacks merit, defense counsel was not ineffective

19

by failing to prompt the trial judge to respond differently to
the jury's question. The Court will deny the unexhausted claim
in Ground Eleven on the merits.

      D.    <u>Dismissal of State Law Claims: Grounds Six and Seven</u>

      Respondent contends Grounds Six and Seven of the petition
should be denied because it is not the province of a federal
habeas court to re-examine state court determinations of state
law. Ground Six of the petition is whether Wallace was denied a
fair trial because the trial court refused to sever Count Four,
possession of the handgun found in the apartment. Ground Seven
is whether Wallace was denied a fair trial when the PCR Court
failed to conduct a hearing regarding Wallace's allegation of
ineffective PCR counsel.

      "To 'fairly present' a [federal] claim, a petitioner must
present a federal claim's factual and legal substance to the
state courts in a manner that puts them on notice that a federal
claim is being asserted." <u>McCandless v. Vaughn</u>, 172 F.3d 255,
261 (3d Cir. 1999) (citations omitted). "'If a habeas petitioner
wishes to claim that an evidentiary ruling at a state court
trial denied him the due process of law guaranteed by the
Fourteenth Amendment, he must say so, not only in federal court,
but in state court.'" <u>Id.</u> (quoting <u>Duncan v. Henry</u>, 513 U.S.
364, 365-66 (1995)).

A petitioner can assert a federal claim "without explicitly referencing specific portions of the federal constitution or statutes" by "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Id. (quoting Daye v. Attorney General of New York, 696 F.2d 186 (2d Cir. 1982) (en banc)).

In his direct appeal brief, Wallace did not rely on state or federal cases that employ federal constitutional analysis in support of his claim that the trial court erred by refusing to sever Count Four. (ECF No. 13-8 at 30-37.) Further, he did not assert his claim in terms so particular as to call to mind a specific right protected by the United States Constitution. (Id.)

Wallace also raised this issue in several pro se post-conviction briefs. (ECF Nos. 13-14 at 3, 8-9; 13-15 at 2). He relied on state law and did not fairly present a federal claim. Therefore, the Court will deny Ground Six of the habeas petition because a federal habeas court cannot review a State court's determination of a state-law issue.

21

In Ground Seven, Wallace challenged the PCR Court's failure to hold a hearing on his claim that PCR counsel was ineffective. (ECF No. 15 at 30-33.)  "[T]here is no right to counsel in state collateral proceedings after exhaustion of direct appellate review." Coleman v. Thompson, 501 U.S. 722, 756 (1991) (citing Pennsylvania v. Finley, 481 U.S. 551, 556 (1987)); Martinez v. Ryan, 132 S.Ct. 1309, 1319 (2012) (recognizing ineffective assistance of counsel at initial collateral review proceeding may provide equitable reason to excuse procedural default, although there is no constitutional right to counsel at initial collateral review proceeding). Therefore, the Court will deny Ground Seven because it does not raise a cognizable federal habeas claim. See Jones v. Pennsylvania Bd of Probation and Parole, 492 F.App'x 242, 244 (3d Cir. 2012) (the Supreme Court in Martinez v. Ryan declined to hold there is a constitutional right to counsel in initial collateral review proceedings)).

    E.   Dismissal of Procedurally Defaulted Claims: Grounds One and Three.

In Ground One of the petition, Wallace alleged trial court error for refusing to excuse a juror. In Ground Three, he alleged ineffective assistance of counsel for failure to object when the prosecutor improperly vouched for the credibility of witnesses. Respondent contends that Wallace is not entitled to

habeas review of Grounds One and Three of the petition because
the PCR court determined, on adequate and independent state
grounds, that these claims were procedurally barred by N.J.
Court Rule 3:22-5. (ECF No. 13 at 58-61.)

> N.J. Court Rule 3:22-5 provides:
>
>> A prior adjudication upon the merits of any
>> ground for relief is conclusive whether made
>> in the proceedings resulting in the
>> conviction or in any post-conviction
>> proceeding brought pursuant to this rule or
>> prior to the adoption thereof, or in any
>> appeal taken from such proceedings.

N.J. Stat. Ann. R. 3:22-5.

When a state procedural rule bars the state courts from
considering the merits of a claim, the claim is procedurally
barred on habeas review. Coleman v. Thompson, 501 U.S. 722, 749-
50 (1991) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989) ("an
adequate and independent finding of procedural default will bar
federal habeas review of the federal claim . . .")

> 1.   Ground One

Respondent correctly noted the PCR Court refused to reach
Wallace's claim that counsel was ineffective by failing to
question a juror. (ECF No. 13-42 at 10 (Issue 34.)) However,
Ground One of the petition is not an ineffective assistance of
counsel claim, it is the underlying trial court error claim,
which was decided on the merits and exhausted on direct appeal.

Therefore, Ground One is not procedurally defaulted, and habeas review is appropriate.

Wallace asserted he was deprived of his due process right to a fair trial when the trial court refused to excuse a juror who could not say for certain that she would not be affected by an out-of-court remark made by the victim's sister about the defendant's guilt. Respondent argued Wallace failed to show how the state court adjudication resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or that the decision was based on an unreasonable determination of facts in light of the evidence presented. (ECF No. 13 at 21.)

In addressing the issue on direct appeal, the Appellate Division held:

> When the exchange [between the trial judge and the juror] is viewed in its entirety, we find no basis for concluding that Judge Lester abused her discretion in failing to exclude the juror at issue, or the entire panel. She had the opportunity to see and hear that juror's responses and was in the best position to decide whether one or all of the jurors would be able to disregard the outburst and decide the case solely on the evidence presented at trial and her instructions, which were appropriate.

State v. Wallace, 2009 WL 1139120, at *9.

The U.S. Supreme Court has recognized, "[t]he theory of our

24

[trial] system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." Skilling v. U.S., 561 U.S. 358, 378 (2010) (quoting Patterson v. Colorado ex rel. Attorney General of Colo., 205 U.S. 454, 462 (1907)). However, the presumption of juror prejudice by juror exposure to outside influences extends only in extreme cases. Id. at 381.

"Jury selection . . . is 'particularly within the province of the trial judge.'" Id. at 386 (quoting Ristaino v. Ross, 424 U.S. 589, 594-595 (1976) (internal quotation marks omitted)). Reviewing courts should resist "second-guessing the trial judge's estimation of a juror's impartiality" because the trial judge is in a better position to consider a host of factors such as "the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." Id. (citing Reynolds v. U.S., 98 U.S. 145, 156-157 (1878)). "A trial court's findings of juror impartiality may be overturned only for manifest error." Id. at 396 (quoting Mu'Min v. Virginia, 500 U.S. 415, 428 (1899) (internal quotation marks omitted)).

Wallace has not met the high standard of showing the State court decision was contrary to or an unreasonable application of Supreme Court precedent, which provides great deference to the

trial judge. The trial transcript establishes that all jurors felt it was wrong of the victim's sister to speak to them outside the courtroom,[2] and they each understood they could not consider the outside comment when making their decision. (ECF No. 13-34 at 18-38.)

The colloquy between the trial judge and the particular juror in question went as follows:

> THE COURT: It has been brought to my attention that there was a comment made in the presence of the jury while you were waiting for me to bring you into the courtroom this morning. Is that correct?
>
> JUROR: Yes.
>
> THE COURT: Were you present?
>
> JUROR: I wasn't. I was in the restroom, so
>
> THE COURT: You were in the restroom?
>
> JUROR: Yeah. When I walked into the room right behind me, they were talking about it, I heard the story.
>
> THE COURT: What did you hear?
>
> JUROR: I heard that the woman - the - I guess the victim's, guy - sister, I think it was, made a comment to some of the jurors that something like he's guilty. I don't

[2] The trial court stated, "I believe to a person this jury understood, and unfortunately the manner in which they spoke to me, the expressions on their face[s], manner in which they talked doesn't show up on a printed record, but almost to a person - the focus was on inappropriateness on the behavior of the person speaking to them." (ECF No. 13-34 at 37.)

remember the whole story exactly.

THE COURT: But you got at least the part she made the statement?

JUROR:  I heard she was laughing about it.

THE COURT:  What did you think about that?

JUROR: I thought it was pretty wrong of her to say. Pretty outrageous thing, especially if she was laughing.

THE COURT:  Really not a laughing matter.

JUROR:  Yes.

THE COURT:  What influence or impact do you feel that would have upon you in your service as a fair juror in this trial?

JUROR: Um, I don't really think it has an influence because of the nature of what happened, and if she was laughing, and that she said it at all – it just seems kind of a crazy thing to say, so –

THE COURT:  What influence do you feel that having heard that would have on your decision making process of the juror?

JUROR:  I don't know. I guess it would like kind of be in my head thinking about why she would say it, but I think I could look at the case fairly.

THE COURT:  You understand that what you have to decide the case upon is what you hear in this courtroom?

JUROR:  Yes.

THE COURT:  And you understand that you have an obligation to follow the law?

    JUROR:  Yes.

    THE COURT:  Are you prepared to do that?

    JUROR:  Yes.

    THE COURT:  For certain?

    JUROR:  Yes

    THE COURT:  Okay. All right.

(ECF No. 13-34 at 27-28.) The Appellate Division's finding on

direct appeal, that the trial judge did not abuse her discretion

by not removing this juror, was not unreasonable based on the

record. Therefore, Ground One of the petition will be denied on

the merits.

        2.   Ground Three

    Respondent also contends Ground Three of the petition,

ineffective assistance of counsel based on failure to object to

the prosecutor's summation, is procedurally defaulted. In Werts

v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000), the State PCR court

refused to address an ineffective assistance of counsel claim

for failure to object to the prosecutor's comments, based on a

procedural rule that precluded review of claims that were

decided on direct review. The underlying prosecutorial

misconduct claim was denied on direct review, and the Third

Circuit held the claim was procedurally defaulted. Id. Here,

Ground Three of the habeas petition is procedurally defaulted

for the very same reason.

Wallace has not shown cause and prejudice to excuse the default. The default occurred because appellate counsel had already raised the underlying claim on direct appeal, and Wallace sought another bite at the apple by repeating the underlying claim, on post-conviction review, in the context of an ineffective assistance of counsel claim. See Murray v. Carrier, 477 U.S. 478, 488 (1986) (existence of "cause" for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded efforts to comply with the State's procedural rule.)

Furthermore, Wallace has not established that constitutional error has resulted in the conviction of one who is actually innocent of the crime. See Schlup v. Delo, 513 U.S. 298, 324 (1995) (describing actual innocence exception to procedural default). Therefore, Ground Three will be dismissed. (ECF No. 13-42 at 8-9)

   F.   Ground Four

Wallace alleged in Ground Four that the PCR Court violated his Sixth Amendment right to effective assistance of counsel by failing to address his allegation that his PCR Counsel was ineffective. Four months before his PCR hearing, Wallace requested new PCR Counsel because he was unsatisfied with the

communication and the effort by his PCR counsel. (ECF No. 15 at 15.) The PCR Court did not substitute counsel.

Respondent contends the state court reasonably applied the Strickland standard in denying this claim. (ECF No. 13 at 31.) However, there is another basis for denying this claim on habeas review. The Supreme Court has not recognized a Sixth Amendment right to effective assistance of counsel on post-conviction review after direct appeal. Coleman, 501 U.S. at 752; Martinez, 132 S.Ct. at 1320. Therefore, Ground Four will be dismissed for failure to state a cognizable claim for relief.

G.   Ground Five

In Ground Five of the petition, Wallace asserted the State court erred in denying his motion to suppress the handgun found in a warrantless search of the apartment where he was arrested. Respondent argued that Wallace was accorded a full and fair opportunity to litigate the merits of his Fourth Amendment claim in state court; therefore, federal habeas review is unavailable. (ECF No. 13 at 33.) Wallace replied that the state trial court decision was wrong. (ECF No. 15 at 19-24.)

In Stone v. Powell, the U.S. Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained

in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). Here, the state trial court held an evidentiary hearing on Wallace's Fourth Amendment claim, and denied the motion to suppress. (ECF No. 13-33 at 4-21). The Appellate Division affirmed the trial court's ruling, and the New Jersey Supreme Court denied certification. State v. Wallace, 2009 WL at 1139120, at *4-5, cert. denied, 200 N.J. 209 (2009). Thus, Wallace had the opportunity to fully and fairly litigate his Fourth Amendment claim, and federal habeas review is unavailable. The Court will deny Ground Five of the petition.

H.   Ground Eight

In Ground Eight, Wallace asserted he was deprived of his right to effective assistance of counsel because trial counsel failed to challenge the State's identification evidence. Respondent argued the PCR Court properly ruled that Wallace failed to establish the two-prong test of Strickland. (ECF No. 13 at 42.) Even if defense counsel had filed a brief in support of the request for a Wade hearing, Respondent asserted it would have made no difference in the outcome. (Id.)

A habeas court reviews the reasoned opinion of the highest state court. Bond v. Beard, 539 F.3d at 289-90. In reviewing the PCR Court decision, the Appellate Division stated:

Defendant argues his trial counsel was

31

ineffective because counsel was unsuccessful in his pretrial request for a <u>Wade</u> hearing and in effect admitted that there was nothing impermissible in the out-of-court identification procedures. Defendant points to David Ortiz's trial testimony where Ortiz stated he was shown a group of pictures, rather than one at a time as represented in pretrial discovery. The PCR judge in analyzing the display of the photo array concluded that "[b]ecause the method employed in <u>Galiano</u> is nearly identical to that used with the witness Ortiz, the Court concludes that the method was not impermissibly suggestive; and therefore no <u>Wade</u> hearing was required." The PCR judge further determined that the other witnesses were not subjected to impermissible suggestiveness. We note that three witnesses identified defendant as the person who shot the victim, and two of them had known defendant for many years. David Ortiz, who knew defendant for five to seven years, stated, "He took his gun out of his waist, and shot [the victim] in the stomach and then in the head." Terrence Matthews, who had known who defendant was for three or four years, identified defendant as the shooter. Finally, Muneerah Munoz was 100% positive that defendant was the shooter.

Additionally, counsel was not ineffective for failing to request a cross-racial identification charge with regard to Ortiz's identification of defendant. Cross-racial identifications occur when a witness is requested to identify an individual of another race. <u>State v. Walker</u>, 417 N.J.Super. 154, 159 (App.Div. 2010). Given that Ortiz had known defendant for five to seven years, and given the corroborating evidence, it was not ineffective for counsel to fail to request the charge.

<u>State v. Wallace</u>, 2013 WL 1788155, at *2.

The test announced by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), governs claims that a petitioner was denied a fair trial because his counsel provided ineffective assistance. The <u>Strickland</u> test has two prongs:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland</u>, 466 U.S. at 687.

The first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1384 (2011) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985) (quoting <u>Strickland</u>, 466 U.S. at 688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."

Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam) (citing Bell v. Cone, 535 U.S. 685, 702 (2002); Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Strickland, 466 U.S. at 689; United States v. Cronic, 466 U.S. 648, 656 (1984)).

The second prong of the Strickland test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 546 (quoting Strickland, 466 U.S. at 694). The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. Lafler, 132 S.Ct. at 1394 (quoting Strickland, 466 U.S. at 696). "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Collins, 742 F.3d at 547 (quoting Strickland, 466 U.S. at 694). "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." Id. (citing Rolan v. Vaughn, 445 F.3d 671, 682 (3d. Cir. 2006)).

The Supreme Court case governing pretrial identification by a witness is Manson v. Brathwaite, 432 U.S. 98, 105, 116 (1977). Manson dictates that convictions based on eyewitness identification at trial, following a pretrial identification by photograph, will only be set aside if the photo identification procedure was "so impermissibly suggestive to give rise to a very

34

substantial likelihood of irreparable misidentification." 390 U.S. at 384.

Here, the Appellate Division relied on the prejudice prong of Strickland to deny Wallace's ineffective assistance of counsel claim. State v. Wallace, 2013 WL 1788155, at *2. Even if counsel was deficient for not requesting a Wade hearing or a cross-racial identification charge, the Appellate Division denied the claim because there was not a reasonable probability the outcome of the trial would have been different if counsel had done so. Id.

The state court's ruling of the prejudice prong of Strickland was reasonable based on the record as a whole. Counsel was not likely to convince the jury that Ortiz and Matthews had misidentified Wallace because they had both known Wallace for years and recognized him at the scene of the crime. Additionally, their identifications were supported by the description of the shooter by a witness who did not know Wallace, lessening the possibility that Ortiz or Matthews had a personal motive to wrongly identify Wallace. The identification evidence as a whole was strong, and the record does not reveal any obvious trial strategy that defense counsel failed to use in challenging the credibility of the witnesses. Therefore, Ground Eight of the petition will be denied.

I.   Ground Nine

Wallace alleged in Ground Nine that counsel was ineffective for: (1) failing to call John Boyd and Eric Murphy as witnesses at trial; (2) inadequate cross-examination at trial about the protective sweep of the apartment where Wallace was arrested; and (3) failing to investigate Ortiz's allegation that Wallace shot him two years ago (ECF No. 15 at 47-51). The Appellate Division relied on the reasons given by the PCR Court to dismiss these claims. Therefore, on habeas review the issue is whether the PCR Court unreasonably applied the Strickland standard in denying Wallace's claims of ineffective assistance of counsel.

The PCR Court noted that John Boyd was Wallace's codefendant, and both were charged with possession of the gun found in the apartment where they were arrested. (ECF No. 13-42 at 13-14.) Boyd pled guilty to possession of the gun, but under state law, this does not preclude Wallace from possessing the gun at the same time, under the theory of joint constructive possession. (Id.) Counsel was not ineffective for failing to call Boyd to testify the gun was his because the jury could still infer that Wallace had joint constructive possession of the gun found in the room they had both walked out of when they were arrested. The PCR Court's decision that counsel's failure to present Boyd's testimony did not prejudice the outcome of the

trial is not an unreasonable application of Strickland. See

Marshall v. Hendricks, 307 F.3d 36, 91 (3d Cir. 2002) (where

topic of witness testimony was peripheral and would not have

materially aided defendant's chances of being acquitted, counsel

was not deficient for failing to question witness.)

Additionally, the PCR Court reasonably applied the

Strickland standard in determining that both the failure to call

Eric Murphy to testify, and the failure to adequately cross

examine the police about the circumstances of the arrest were

not prejudicial to the outcome of the trial. Even if Murphy had

testified at trial that he did not consent to the police

entering the apartment to execute the arrest warrant, and even

if the jury believed the police did not have a right to do a

protective sweep of the apartment, it is the province of the

trial court, not the jury, to invalidate the arrest or exclude

evidence. (ECF No. 13-42 at 10-11, 14-15.) Once the motion to

suppress was denied by the court before trial, counsel had no

reason to make a suppression argument to the jury.

Finally, Wallace claimed counsel was ineffective for

failing to impeach Ortiz's credibility. Ortiz had told police he

feared Wallace because Wallace shot him two years ago. Wallace

contends this was false because he was in prison at that time.

Wallace believes counsel should have asked the jury to infer

that Ortiz had mistaken him for the person who had shot him two years earlier.

The PCR Court noted defense counsel raised this issue before trial. (ECF No. 13-42 at 15.) The trial judge said she would not allow the prosecutor to admit Ortiz's statement that Wallace had shot him two years ago. (Id.) The trial judge also warned defense counsel that if he introduced evidence of Wallace's criminal history to the jury, he would do so at his own great peril. (Id. at 16.) Ultimately, counsel did not raise the issue. (Id. at 15.)

At the post-conviction hearing, Kinsale, Wallace's trial counsel, testified that he did not raise this issue on cross examination because he feared any benefit would be outweighed by the fact the jury would learn that Wallace had prior terms of incarceration. (Id. at 16.) The PCR Court found this was sound trial strategy, and therefore, Wallace failed to meet the deficient performance prong of the Strickland test. (Id.)

A habeas petitioner must overcome a presumption that counsel's actions were based on sound trial strategy. Jacobs v. Horn, 395 F.3d 92, 118 (3d Cir. 2005). It is hard to imagine how Ortiz's testimony that he told police Wallace had shot him two years ago would be very helpful to the defense. Even assuming Wallace could show he was in prison two years ago and could not

have shot Ortiz then, Ortiz might have testified that he had been wrong about the timing but he was sure it was Wallace who shot him. Wallace did not overcome the presumption that his counsel's strategy in avoiding such a scenario was sound.

J.    Ground Ten

Wallace alleged in Ground Ten that when the jury asked the trial court judge "what was the distance that Terrance reported that he was away from the scene originally in his report," the court erred by stating:

> The answer to that question is not on the record. You may if you choose, attempt to clarify this question, but in the original report the answer to that question is not in the record and I cannot provide it to you.

The juror wanted to clarify the question, but the judge told him he could not speak on the record, and the jury could rephrase the question [in writing] or ask another question the next morning, but they did not do so.

To establish a due process violation from a trial court error, the error must have "violated the fundamental fairness essential to the concept of justice" or in other words "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v DeChristoforo, 416 U.S. 637, 642 (1974).

The Appellate Division relied on the PCR Court's reasoning

for denying this claim on appeal. Therefore, this Court must review whether the PCR Court's decision was contrary to or an unreasonable application of the due process standard announced in DeChristoforo.

First, the PCR Court did not find trial court error because the trial court reasonably interpreted the jury's request as seeking Matthews's police report, which had not been introduced into evidence. (ECF No. 13-42 at 22-23.) But even if the trial judge was wrong, she gave the jury the opportunity to rephrase the question, and the jury never did so. (Id. at 23.) Therefore, the PCR Court found no prejudice.

The record does not reveal that the trial court incorrectly interpreted the jury's question. (ECF No. 13-38 at 7.) It was reasonable to think the jury was asking to see Matthews' police report, which was not available because it had not been admitted into evidence.[3] If the trial judge was right, there was no trial error that could have prejudiced Wallace.

Even if the trial judge was wrong, and the jury wanted a read back of Matthews' testimony, it would not likely have made

---

[3] Although the police report was not admitted into evidence, the prosecutor marked the document as an exhibit, and Terrance Matthews referred to the police report to refresh his memory. (ECF No. 13-35 at 55-57.) He also referred to the report on cross-examination. (Id. at 68-71.)

much of an impact. Defense Counsel cross examined Matthews on

his distance from the shooting. (ECF No. 13-35 at 59-61, 65-67,

72-75.) Ultimately, counsel prompted Matthews to admit he told

the police he was eight feet away from the crime when it

occurred, but he could have been as much as 48 feet away. (Id.

at 74-75.)

The PCR Court found this of little significance because

Matthews knew Wallace, and he was close enough to the crime to

identify him as the shooter, and describe the gun as a black

revolver. And, Matthews was only one of three witnesses to

identify Wallace. Therefore, the PCR Court reasonably applied

DeChristoforo by finding this was not a trial error that

violated "fundamental fairness essential to the concept of

justice."

K.    Grounds Twelve and Thirteen

Ground Twelve is whether trial counsel was ineffective for

failing to advise Wallace of a plea offer, and Ground Thirteen,

in the alternative, is whether trial counsel was ineffective for

failing to engage in plea negotiations. Wallace discovered there

were three dates on the Promis Gavel[4] where plea negotiations

---

[4] "The Promis/Gavel system is an automated criminal case tracking
system enhanced and supported by the Criminal Practice Division
and the Information System Division (ISD) of the Administrative
Office of the Courts (AOC) in response to the needs of the

41

were scheduled, but his attorney never informed him of any plea offers.

The PCR Court is the only state court to issue a reasoned opinion on this claim. At the PCR hearing, the Court asked Kinsale, defense counsel, whether the State ever made a plea offer or whether Wallace ever asked him to communicate a plea offer to the State. (ECF No. 13-41 at 30.) Kinsale said there were no plea negotiations. (ECF No. 13-41 at 30.)

Kinsale also testified that it was the practice of the Essex County Prosecutor's Office not to make plea offers in homicide cases. (Id. at 7.) Furthermore, Wallace maintained his innocence and did not want to make a plea offer to the prosecutor. (Id. at 7-8.) It was Kinsale's normal procedure to urge a client to consider a plea offer, but he does not waste time if a client says there is no offer that he would accept. (Id. at 10.) In light of Kinsale's testimony, the PCR Court's denial of these ineffective assistance of counsel claims was reasonable. Thus, Grounds Twelve and Thirteen of the petition will be denied.

III. CERTIFICATE OF APPEALABILITY

This Court must determine whether Wallace is entitled to a

---

criminal justice community." Available at
http://www.judiciary.state.nj.us/essex/criminal/promis.htm

certificate of appealability in this matter. <u>See</u> Third Circuit Local Appellate Rule 22.2. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Wallace has not made a substantial showing, and this Court will not issue a certification of appealability.

IV.   <u>CONCLUSION</u>

In the accompanying Order filed herewith, the Court will deny the habeas petition.

Dated: _____               _____

**Stanley R. Chesler**
United States District Judge